**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **PANDORA JEWELRY, LLC** | : | |
| 250 Pratt Street | : | |
| Baltimore, MD 21201 | : | |
| | : | |
| **Plaintiff,** | : | Civil Action No. _____ |
| | : | |
| **v.** | : | Judge: _____ |
| | : | |
| **ATELIER COUTURE, INC.** | : | |
| 19900 E Country Club Drive | : | **\*JURY TRIAL DEMANDED\*** |
| Apt. 405 | : | |
| Aventura, FL 33180 | : | |
| | : | |
| Serve: Arie Corcos, R/A | : | |
| 19900 E County Club Drive | : | |
| Apt. 405 | : | |
| Aventura, FL 33180 | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff PANDORA Jewelry, LLC ("PANDORA"), brings this action against Defendant Atelier Couture, Inc. ("Atelier") and states as follows for its Complaint:

## INTRODUCTION

1.      Atelier is a former dealer of PANDORA products that has breached its contractual agreement with PANDORA not to sell PANDORA products to unauthorized dealers and refused to pay for PANDORA products that it purchased and received from PANDORA.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff PANDORA is a Maryland limited liability company.

3.      PANDORA's sole member is Pandora Jewelry, Inc., a corporation that is incorporated in Maryland and has its principal place of business in Maryland.  Plaintiff PANDORA, therefore, is a citizen of the State of Maryland.

4.     Defendant Atelier is a corporation that is a citizen of Florida because it is incorporated in Florida and has its principal place of business in Florida.

5.     PANDORA and Atelier are parties to a contract ("PANDORA-Atelier Contract").[1]

6.     This Court has subject matter jurisdiction over PANDORA's claim under diversity jurisdiction, 28 U.S.C. § 1332(a), because Plaintiff PANDORA is a citizen of Maryland, Defendant Atelier is a citizen of Florida, and the amount in controversy exceeds $75,000.

7.     This Court has personal jurisdiction over Atelier because, through the PANDORA-Atelier Contract, Atelier created a meaningful relationship, with regularly recurring and ongoing placement of new orders of PANDORA products from Plaintiff PANDORA, purchases from PANDORA for seasonal PANDORA promotional materials for display in its retail location (*e.g.* Valentine's Day, Mother's Day, etc.), and other communications and interaction, with PANDORA over a number of years, and thus purposefully availed itself of the privilege of doing business in Maryland.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to PANDORA's claim occurred in Maryland.

## FACTUAL ALLEGATIONS

9.     PANDORA is one of the most recognized jewelry brands in the world.  Founded by a Danish goldsmith in 1982, PANDORA offers affordable, hand-finished jewelry made to the highest environmental and ethical standards.

10.    As a seller of jewelry, PANDORA's brand image is extremely important to its business, and PANDORA engages in extensive brand protection efforts.

---

[1] Upon information and belief, Atelier is in possession of the PANDORA-Atelier Contract, which is not attached because it is confidential and contains sensitive business information, the disclosure of which would be detrimental to PANDORA.  However, to the extent Atelier does not have a copy of the PANDORA-Atelier Contract, PANDORA will provide it, upon request, prior to commencement of discovery.

11.     To protect its brand, PANDORA sells its products exclusively through its website, http://estore-us.pandora.net, PANDORA owned and operated stores, and franchisees and retailers, all of whom sign agreements with PANDORA regulating where and how they sell PANDORA products.

12.     This system of exclusive distribution is a vital part of PANDORA's brand protection efforts because it allows PANDORA to ensure, through contract, that all of its authorized resellers follow certain branding, quality control, and customer service requirements.

13.     On or about December 15, 2019, PANDORA entered into the PANDORA-Atelier Contract with Atelier.

14.     The PANDORA-Atelier Contract was initialed and signed by Atelier's president on behalf of Atelier on December 15, 2019.

15.     By its terms, the PANDORA-Atelier Contract is governed by the laws of the State of Maryland, without regarding to its principles of conflict of laws.

16.     Under the PANDORA-Atelier Contract, PANDORA agreed to make Atelier an Authorized Retailer of PANDORA products, to sell PANDORA products to Atelier, and to allow Atelier to use PANDORA's trademarks, including holding itself out as an authorized dealer of PANDORA products, in accordance with the contract terms.

17.     Under the PANDORA-Atelier Contract, Atelier agreed to pay PANDORA for the PANDORA products that it purchased.

18.     Moreover, Atelier agreed that, if it "is delinquent in payments to Pandora," it "shall pay reasonable attorney's fees and costs and expenses that Pandora incurs in collecting such payments."

19.     Additionally, Atelier agreed to pay interest on delinquent amounts "at the greater of the rate of 18% per annum or the maximum contract rate of interest permitted by governing law, from and after the date of accrual."

20.     Under the PANDORA-Atelier Contract, Atelier also agreed to limit the manner in which it would sell PANDORA products.

21.     Atelier agreed that it "shall only sell Pandora Products at the retail location specified in this Agreement" and "shall only sell Pandora Products to end retail consumers."

22.     Atelier agreed not to sell PANDORA products "to other entities or retailers," and agreed not to "offer for sale, or facilitate the offering of Pandora Products for sale on the internet."

23.     The prohibition on online sales "survives the termination of this Agreement."

24.     The above restrictions on the manner of sale are an essential part of PANDORA's exclusive distribution system and a material consideration for which PANDORA bargained from Atelier in exchange for making Atelier an Authorized Retailer.

25.     The PANDORA-Atelier Contract allows PANDORA to terminate the contract upon written notice to Atelier.

26.     Upon termination, Atelier is required to remove any indicia of being a PANDORA Authorized Retailer from its retail locations and websites.

27.     Additionally, upon termination, PANDORA has the right, but not the obligation, to buy back remaining PANDORA products that Atelier has in inventory.

28.     Upon PANDORA's request, Atelier is required to provide an accounting of its remaining inventory so that PANDORA can decide whether it will buy back that inventory.

29.     If PANDORA declines to buy back Atelier's remaining inventory, Atelier may sell its remaining inventory of PANDORA products for sixty days ("Inventory Sell-Through Period"), subject to all other contractual limits on resale, but "shall have no right to sell its inventory of Pandora Product after the Inventory Sell-Through Period has expired."

30.     If Atelier continues to sell PANDORA products after its Inventory Sell-Through Period ends, it agreed to pay liquidated damages of $500.00 for each business day in which it continues to sell PANDORA products after the end of its Inventory Sell-Through Period.

31.     Under the PANDORA-Atelier Contract, Atelier also agreed that violations of the above resale restrictions cause irreparable and hard-to-ascertain damage against PANDORA, making injunctive relief appropriate.

32.     Despite agreeing to the above terms, Atelier covertly supplied PANDORA products to unauthorized online resellers in violation of the PANDORA-Atelier Contract.

33.     PANDORA discovered that Atelier was supplying its products to unauthorized online resellers during a separate litigation involving those sellers.

34.     Atelier's resale of PANDORA products to unauthorized online resellers damages PANDORA's exclusive distribution system and brand, and is a material breach of Atelier's commitments under the PANDORA-Atelier Contract.

35.     On or about September 16, 2021, PANDORA informed Atelier that it had discovered Atelier's breach and would be terminating Atelier's status as an Authorized Retailer.

36.     At the time, Atelier owed PANDORA a past due balance of $66,747.58 for products that PANDORA had sold to Atelier.

37.     PANDORA's letter informed Atelier of this past due balance, and warned Atelier that PANDORA would seek contractual interest and attorney's fees if Atelier did not pay immediately.

38.     PANDORA's letter also reminded Atelier of its contractual obligation not to sell PANDORA products following the Inventory Sell-Through Period, and that PANDORA would seek the liquidated damages it is contractually entitled to if Atelier violated that obligation.

39.     PANDORA's letter further requested an accounting of Atelier's remaining inventory of PANDORA products within five business days so that PANDORA could decide whether it would buy back those products.

40.     Atelier never responded to PANDORA's letter.

41.     On September 23, 2021, PANDORA sent a follow-up letter to Atelier.

42.     PANDORA's follow-up letter informed Atelier that PANDORA would not buy back any inventory because Atelier failed to account for its remaining inventory.

43.     Thus, pursuant to the PANDORA-Atelier Contract, Atelier had an Inventory Sell-Through Period of 60 days, until November 22, 2021.

44.     PANDORA's follow-up letter reiterated Atelier's obligations and warned that PANDORA would seek liquidated damages if Atelier continued to sell PANDORA products past the end of the Inventory Sell-Through Period.

45.     Atelier finally responded to PANDORA on November 2, 2021, indicating that it wanted to negotiate a payment plan for its outstanding debt and a longer sell-through period.

46.     PANDORA was willing to negotiate with Atelier and the parties engaged in discussions over the next few weeks.

47.     However, Atelier stopped responding to messages from PANDORA on or about November 22, 2021.

48.     As of the date of filing this Complaint, Atelier has not paid any portion of the past due balance of $66,747.58 for products it previously purchased from PANDORA.

49.     Moreover, although the Inventory Sell-Through Period expired on November 22, 2021 and has not been extended, Atelier has not agreed to stop selling PANDORA products, but is, upon information and belief, continuing to sell PANDORA products.

50.     Atelier's continued sale of PANDORA products after the end of the Inventory Sell-Through Period continues to damage PANDORA's exclusive distribution system and brand, and triggers liquidated damages of $500.00 per business day after November 22, 2021.

## COUNT I – BREACH OF CONTRACT

51.     PANDORA hereby incorporates the allegations contained in the foregoing Paragraphs 1-50 as if fully set forth herein.

52.     PANDORA and Atelier are parties to the PANDORA-Atelier Contract.

53.     The PANDORA-Atelier Contract is a valid and enforceable agreement to which Atelier agreed, through its owner's signature.

54.     PANDORA has performed all of its obligations under the PANDORA-Atelier Contract.

55.     Atelier materially breached the PANDORA-Atelier Contract by failing to pay a past due balance of $66,747.58 for products that it has purchased and received from PANDORA.

56.     Atelier's failure to pay PANDORA for these products has damaged PANDORA in the amount of $66,747.58.

57.     PANDORA is entitled to compensatory damages, including the principal amount of $66,747.58, plus interest and the attorney's fees and costs for this collections action.

## COUNT II – BREACH OF CONTRACT

58.     PANDORA hereby incorporates the allegations contained in the foregoing Paragraphs 1-57 as if fully set forth herein.

59.     Atelier also materially breached the PANDORA-Atelier Contract by continuing to sell PANDORA Products after its Inventory Sell-Through Period ended on November 22, 2021.

60.     Atelier's continued sale of PANDORA products after the end of the Inventory Sell-Through Period has damaged PANDORA, in an amount equal to $500.00 per business day following November 22, 2021, or $13,000 as of December 30, 2021.

61.     PANDORA is entitled to compensatory damages, including liquidated damages as specified in the PANDORA-Atelier Contract, for Atelier's continued sale of PANDORA products after the end of the Inventory Sell-Through Period.

62.     PANDORA is entitled to attorney's fees and costs for this lawsuit pursuant to the PANDORA-Atelier Contract.

63.     PANDORA is also entitled to injunctive relief, under the PANDORA-Atelier Contract, to preclude Atelier's continued sale of PANDORA products.

64.     Without injunctive relief, PANDORA would suffer irreparable harm because Atelier's sales, in breach of the PANDORA-Atelier Contract, compromise the integrity of PANDORA's Authorized Retailer network, and cause significant damage to PANDORA's brand and brand protection efforts that cannot be easily compensated by money damages later.

## PRAYER FOR RELIEF

WHEREFORE, PANDORA prays for relief and judgment as follows:

A.     Judgment in favor of PANDORA and against Defendant Atelier Couture, Inc.

B.     Compensatory damages that exceed $75,000 and include:

(i)     $66,747.58 for outstanding invoices;

    (ii)    18% interest per annum on that amount from September 16, 2021;

    (iii)    $500.00 per business day following November 22, 2021 in liquidated damages, totaling $13,000 as of December 30, 2021 and continuing to acrue;

    (iv)    PANDORA's attorney's fees and costs associated with this litigation.

C.    Preliminary and permanent injunctions enjoining Defendant Atelier Couture, Inc., as well as its agents, servants, employees, attorneys, and other persons in active concert or participation with it, from selling PANDORA products.

D.    Such other and further relief as the Court deems just, equitable, and proper.

Date:  December 30, 2021

Peter C. Nanov (Bar No. 20947)
Vorys, Sater, Seymour and Pease LLP
1909 K Street NW, Suite 900
Washington, D.C. 20006-1152
Phone: (202) 467-8800
Fax: (202) 467-8900
Email: pcnanov@vorys.com

*William D. Kloss Jr. (Ohio Bar 0040854)\**
*Martha Brewer Motley (Ohio Bar 0083788)\**
*Vorys, Sater, Seymour and Pease LLP*
*52 E. Gay Street*
*P.O. Box 1008*
*Columbus, OH 43216-1008*
*Phone: (614) 464-6400*
*Fax: (614) 719-6350*
*Email: wdklossjr@vorys.com*
*Email: mbmotley@vorys.com*

*\* pro hac vice motions to follow*

*Attorneys for Plaintiff PANDORA Jewelry, LLC*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PANDORA demands a trial by jury on all issues so triable.

Date:  December 30, 2021

Peter C. Nanov (Bar No. 20947)
Vorys, Sater, Seymour and Pease LLP
1909 K Street NW, Suite 900
Washington, D.C. 20006-1152
Phone: (202) 467-8800
Fax: (202) 467-8900
Email: pcnanov@vorys.com

*William D. Kloss Jr. (Ohio Bar 0040854)\**
*Martha Brewer Motley (Ohio Bar 0083788)\**
*Vorys, Sater, Seymour and Pease LLP*
*52 E. Gay Street*
*P.O. Box 1008*
*Columbus, OH 43216-1008*
*Phone: (614) 464-6400*
*Fax: (614) 719-6350*
*Email: wdklossjr@vorys.com*
*Email: mbmotley@vorys.com*

*\* pro hac vice motions to follow*

*Attorneys for Plaintiff PANDORA Jewelry, LLC*